IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | BANKRUPTCY NO. 16-10020-TMD |
| FPMC AUSTIN REALTY | § | |
| PARTNERS, LP, | § | CHAPTER 11 PROCEEDING |
| | § | |
| DEBTOR | § | |

### DEBTOR'S APPLICATION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328 AUTHORIZING EMPLOYMENT AND RETENTION OF CBRE, INC AND KOA PARTNERS, LLC AS CO-REAL ESTATE BROKERS FOR THE DEBTOR

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES the debtor and debtor in possession in the above-captioned case (the "Debtor"), respectfully submit this application (the "Application") for an order, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order authorizing the employment and retention of CBRE, Inc. ("CBRE") and KOA Partners, LLC ("KOA") as co-real estate brokers for the Debtor, effective as of the date of the Application. In support of the Application, the Debtor submits the Declaration of Scott Senese, a Senior Managing Director of CBRE, attached as Exhibit "A" (the "Senese Declaration") and the Declaration of Harry Lake, CEO of KOA attached as Exhibit "B" (the "Lake Declaration"). In further support of the Application, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On January 5, 2016 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

3.     The Debtor continues to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditor's committee has been appointed in this Chapter 11 Case by the Office of the United States Trustee for the Western District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Debtor's Chapter 11 Case.

4.     The Debtor's primary asset is a medical campus property commonly known as the Forrest Park Medical Center Hospital and Medical Office Building located 8.5 acres on the south side of SH 45 North between MoPac and I-35 in Round Rock, Texas (the "Property"). Forrest Park Medical Center consists of a short-term acute care hospital ("Hospital") and medical office building ("MOB") together with a 445 stall adjacent parking garage. The Hospital is a 4-story, 146,000 square foot facility containing 10 operating rooms, 6 ICU rooms, and 40 patient rooms, many including family suites. The MOB contains 80,000 square feet of rentable area. The Hospital is leased to a single tenant that has yet to commence operations. The Hospital and MOB share use of the parking garage.

5.     While one of the 3 buildings located on the Property was designed and built for the specific use as an acute care hospital, the Debtor does not operate the health care business

conducted on site. Construction of the Hospital, MOB and garage are complete with only minor additional completion and punch list items remaining. Certificates of occupancy have issued for the Hospital and MOB. However, as of the Petition Date, the Hospital is leased, but the MOB remains vacant.

## RELIEF REQUESTED

6.  The Debtor seeks approval, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, to employ and retain CBRE and KOA as co-real estate brokers in connection with this Chapter 11 case.

## BASIS FOR RELIEF

7.  CBRE is among the world's largest full service commercial real estate companies. The Debtor seeks to retain CBRE as its real estate broker based on CBRE's experience with the Property pre-petition, and CBRE's knowledge in commercial real estate. CBRE has extensive experience in selling commercial real estate both inside and outside the bankruptcy context. KOA is a privately held firm founded in 2015 focused on real estate acquisition, development, asset management, advisory, and project management. Heathcare comprises one of the primary focuses for KOA and KOA has unparalleled familiarity with the Property and the healthcare market in which the Property will operate. The Debtor selected CBRE and KOA to market and sell the Property because of their ability to pool resources and develop and deliver superior analytical, research and client service; their proven track record of meeting client needs; and CBRE's position as an industry leader coupled with KOA's specific knowledge of the Property. For these reasons, the Debtor concluded that CBRE and KOA (collectively referred to as the "Brokers") have the expertise and resources required to sell the Property and maximize its value.

8. Bankruptcy Code § 327(a) provides that the Debtor is permitted to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including . . . on a contingent fee basis." 11 U.S.C. § 328(a).

9. Bankruptcy Rule 2014 provides that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the names of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

10. By this Application, the Debtor requests that the Court approve the employment and compensation arrangements described in the Exclusive Sale Listing Agreement attached as Exhibit "C" and described below, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The employment arrangement with the Brokers will be beneficial to the Debtor's estate because it will provide the Debtor with much needed assistance in selling the Property, the Debtor's primary asset.

11. Further the Debtor believes that the compensation arrangement detailed in the Exclusive Sale Listing Agreement and described below provides both certainty and the proper inducement for the Brokers to act expeditiously and prudently with respect to the matters for which it will be employed. The engagement of co-brokers will not increase the cost to the estate, but will exponentially increase the expertise and market reach available to market the Property.

## SERVICES TO BE PROVIDED BY BROKERS

12.     As set forth above, the Debtor seeks to employ the Brokers to assist the Debtor in marketing and selling the Property. The Brokers are familiar with the Property and the health care markets in which the Property will be operated by virtue of its engagement as broker for a virtually identical facility located in San Antonio and their knowledge of the history and development of the Property. The Debtor believes that the Brokers are both well qualified and uniquely able to sell the property in a cost-effective and efficient manner.

13.     Further, CBRE is a commercial real estate services firm with full service operations in metropolitan areas throughout the world, including Texas. CBRE offers a range of services to occupiers and owners of, and lenders to and investors in, commercial real estate assets including, but not limited to, property sales and related valuation services. CBRE has extensive knowledge and experience in valuing commercial real estate, and providing commercial real estate related services in Chapter 11 reorganization cases. KOA will enhance the expertise and market access that CBRE brings to bear and has specific knowledge of the property and the market as well as focused expertise regarding healthcare proeprties.

14.     Pursuant to the Exclusive Sale Listing Agreement, the Brokers will perform services for the Debtors, including, but not limited to, the following:

   a.   marketing the Property;
   b.   assistance with negotiations regarding any potential transactions involving the Property;
   c.   analysis of and recommendations regarding offers for transactions involving the Property; and
   d.   assistance with consummation of any transactions involving the Property.

15.     The Debtor submits that the Brokers are particularly well-suited to act as the Debtor's real estate broker because of the firms' recent and intimate knowledge regarding the

Property and globally well-known reputation and experience as real estate brokers, appraisers and consultants.

**SUMMARY OF THE TERMS OF THE EXCLUSIVE SALE LISTING AGREEMENT**

16. The Exclusive Sale Listing Agreement provides that the Brokers shall be paid a commission, due in full at the time of closing or transfer of title to the Property, of two and one half percent (2.50%) of the gross sales price; provided however, if the Property is purchased by Mayco Development, or any of its affiliates, the Brokers' commission will be one and one half percent (1.50%) of the gross sales price. Broker may pay up to one percent of the Brokers' commission to a Cooperating Broker as a commission or finder's fee. The Brokers' commission shall be reduced by one hundred (100) basis points should there be no Cooperating Broker.

17. The Debtor respectfully submits that, inasmuch as the Brokers' compensation is results-oriented and directly related to benefits received by the Debtor's estate, requiring the Brokers to file periodic fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code and in compliance with Bankruptcy Rule 2016 is unnecessary. The Brokers will be employed by the Debtor to perform highly specialized tasks. It is the general practice of the Brokers and the general practice of other listing agents who provide similar services, to be paid on a contingency fee basis, rather than keeping detailed time records similar to those customarily kept by attorneys. Therefore, the Debtor submits that requiring the Brokers to file periodic fee applications pursuant to sections 330 and 331 of the Bankruptcy Code is unnecessary because the Brokers will not be paid unless and until they sell the Property for the Debtor.

18. As noted above, the Brokers' compensation will not be calculated and paid based on the number of hours they expend providing the Services to the Debtor. Therefore, Brokers

request that they be excused from filing time records. The Brokers will, however, file a final fee application in accordance with applicable Bankruptcy Rules, Local Rules and any orders entered by the Court.

19. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## CBRE'S DISINTERESTEDNESS

20. To the best of the Debtors' knowledge, CBRE and its employees do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Senese Declaration.

21. CBRE has represented to the Debtor that it has not provided and will not provide services to any parties other than the Debtor in these cases or in conjunction with any matters that would be adverse to the Debtor arising from, or related to, the Chapter 11 case. CBRE has further represented to the Debtor that neither it, nor its employees, have any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in the Western District of Texas.

22. Based on the Senese Declaration, the Debtor believe that CBRE is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. The Debtor has been informed that CBRE will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, CBRE will supplement its disclosure to this Court.

23. The Debtor's retention of CBRE pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, its creditors and its estate.

## KOA'S DISINTERESTEDNESS

24. To the best of the Debtors' knowledge, KOA and its employees do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Lake Declaration.

25. KOA has represented to the Debtor that it has not provided and will not provide services to any parties other than the Debtor in these cases or in conjunction with any matters that would be adverse to the Debtor arising from, or related to, the Chapter 11 case. KOA has further represented to the Debtor that neither it, nor its employees, have any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in the Western District of Texas.

26. Based on the Lake Declaration, the Debtor believe that KOA is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. The Debtor has been informed that KOA will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, KOA will supplement its disclosure to this Court.

27. The Debtor's retention of KOA pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, its creditors and its estate.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order authorizing the retention of CBRE and KOA as co-real estate broker for the Debtor in accordance with the terms and conditions set forth in the Exclusive Sales Listing Agreement, effective as of the date of this Appliation, and grant the Debtor such other and further relief as is just and proper.

Respectfully submitted this March 17, 2016.

> THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
> 66 Granburg Circle
> San Antonio, Texas 78218
> Telephone (210) 601-9405
> Email: rbattaglialaw@outlook.com
>
> By: */s/ Raymond W. Battaglia*
>      Raymond W. Battaglia
>      Texas Bar No. 01918055
>
> **ATTORNEYS FOR FPMC AUSTIN REALTY PARTNERS, LP.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list

> */s/ Raymond W. Battaglia*
> Raymond W. Battaglia