## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **BANKRUPTCY NO. 16-10020-TMD** |
| **FPMC AUSTIN REALTY** | § | |
| **PARTNERS, LP,** | § | **CHAPTER 11 PROCEEDING** |
| | § | |
| **DEBTOR** | § | |

**MOTION FOR ORDER (A) APPROVING SALE PROCEDURES FOR THE SALE OF THE DEBTOR'S PROPERTY AND OTHER ASSETS; (B) SCHEDULING A SALE HEARING; AND (C) GRANTING RELATED RELIEF**

**TO THE HONORABLE TONY M. DAVIS UNITED STATES BANKRUPTCY JUDGE:**

FPMC Austin Realty Partners, LP ("**FPMC**" or "**Debtor**") the debtor and debtor in possession in the above-captioned case hereby applies to the Court for entry of an order: (a) approving sale procedures for the sale of the Debtor's property and other assets (collectively, the "**Property**"); (b) scheduling a hearing to consider the sale of the Property; and (c) granting related relief, including but not limited to approving the form and manner of notices related to the foregoing (the "**Sale Procedures Motion**") In further support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105, 363, 365, 503, 1107 and 1108 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004 and 9014 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas (the "**Local Rules**").

## BACKGROUND

3.      On January 5, 2016 (the "**Petition Date**"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

4.      The Debtor continues to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditor's committee has been appointed in this Chapter 11 Case by the Office of the United States Trustee for the Western District of Texas (the "**United States Trustee**"). No trustee or examiner has been appointed in the Debtor's Chapter 11 Case.

5.      The Debtor's primary asset is a medical campus property commonly known as the Forrest Park Medical Center Hospital and Medical Office Building located 8.5 acres on the south side of SH 45 North between MoPac and I-35 in Round Rock, Texas. Forrest Park Medical Center consists of a short-term acute care hospital ("Hospital") and medical office building ("MOB") together with a 445 stall adjacent parking garage ("Garage" together with the Hospital and the MOB are collectively referred to herein as the "Property"[1]). The Hospital is a 4-story, 146,000 square foot facility containing 10 operating rooms, 6 ICU rooms, and 40 patient rooms, many including family suites. The MOB contains 80,000 square feet of rentable area. The Hospital and MOB share use of the Garage.

6.      While one of the 3 buildings located on the Property was designed and built for the specific use as an acute care hospital, the Debtor does not operate the health care business conducted on site. Construction of the Hospital, MOB and Garage are complete with only minor additional completion and punch list items remaining. Certificates of occupancy have issued for the Hospital

---

[1] Also included within the definition of "Property" are (i) all furniture, fixtures, equipment, appliances, supplies and other articles of personal property located on and used in connection with the operation or maintenance of the Property provided they are owned by the Debtor; (ii) all warranties and guaranties issued with respect to the Improvements that are capable of being assigned at Closing; and (iii) those contract rights that the Debtor and the purchaser mutually agree to sell and purchase, respectively.

and MOB.  However, as of the Petition Date, the Hospital is leased to a single tenant that has yet to commence operations.  Two tenants have executed leases for space in the MOB, although neither tenant has taken possession of the leased space.

7.     The Debtor filed the Chapter 11 Case to prevent foreclosure upon the Property and to conduct an orderly sale of the Property.  Since the Petition Date, and prior to engaging a real estate broker or actively marketing the Property, the Debtor received numerous expressions of interest to acquire the Property.  Those early expressions of interest progressed quickly to negotiations of a Purchase and Sale Agreement ("PSA") with one particular prospective buyer.  As those negotiations concluded the Debtor received letters of intent from several other prospective purchasers.

8.     Considering the number of prospective purchasers, the identity of those potential purchasers and the terms contained in their offers[2], the Debtor determined to forgo a market clearing process and a formal sale procedure.  Instead, the Debtor engaged CBRE, Inc. and KOA Partners, LLC ("Brokers") to assist in managing an informal sale process.  The Brokers notified the prospective purchasers of a call for "Best and Final Offers".  Shortly after the expiration of the self-imposed offer deadline, the Debtor received an offer to purchase the Property that was clearly superior to the other offers.  The Debtor advised that prospective purchaser of the Debtor's intent to proceed with a motion to sell the Property to the purchaser as a designated buyer.  Within 24 hours, the Debtor received a revised offer with a meaningfully higher purchase price from another prospective purchaser and on otherwise equal terms from different prospective purchaser.

9.     Presented with a superior offer the Debtor could no longer proceed with the informal process previously outlined and fulfill its fiduciary obligations to its limited partners.  In order to restore credibility, predictability and transparency to the sale process, the Debtor decided to request

---

[2] All of the offers provided for a purchase price significantly exceeding the total of all claims against the Debtor.

approval from this Court an abbreviated sale process.

## RELIEF REQUESTED

10. By this Sale Procedures Motion, the Debtor requests, *inter alia*, the entry of an order (the "**Sale Procedures Order**") approving the following procedures for the sale of the Property, (the "**Sale Procedures**"):

11. To complete a sale of the Property, the Debtor proposes the following process:

   a. **Property to be Sold Free and Clear** Except as otherwise provided in definitive documentation with respect to the Sale, all of the rights, title, and interest of the Debtor in the Property shall be sold free and clear of all pledges, liens, security interests, hypothecations encumbrances, claims, charges, options, deeds of trust, encroachments, retentions of title, conditioned sale arrangements, rights of first offer, rights of first refusal, licenses or any other limitations, restrictions and interests of any kind thereon and there against (collectively, the "**Claims and Interests**").

   b. **Qualification of Buyers** To participate in the sale process and to have an offer considered by the Debtor, each prospective purchaser must deliver a written offer satisfying the criteria below. A "**Qualified Buyer**" is a financially qualified prospective buyer that delivers a binding purchase and sale agreement that in the discretion of the Debtor (after consultation with the Debtor's pre-petition lenders[3] and DIP lender) satisfies the following criteria (a "**Qualified Offer**") and timely submits a deposit as provided below:

      i. The Brokers shall advise each prospective purchaser that has expressed interest in purchasing the Property of a request to submit a "Best and Final" Qualifying Offer before the Offer Deadline (defined hereinbelow) established by the Court in the Sale Procedures Order.

      ii. <u>Deposit Amount and Deadline</u>  In order to be a Qualified Buyer, a prospective purchaser must deposit the sum of Ten Million Dollars ($10,000,000.00) by certified check or official bank check, subject to collection, made payable to Allegiance Title Company, 8111 Preston Road Suite 300, Dallas, Texas 75225, Attention: Traci Miller, Phone: 214 635 3700, Email: Tmiller@allegiancetitle.com, solely in the capacity as escrow agent ("**Escrow Agent**"), or by wire transfer of immediately available federal funds to an account at such bank as designated by Escrow Agent (the "**Deposit**").  The Deposit shall be held by the Escrow Agent in escrow to be applied or disposed of by it

---

[3] Frost Bank, a Texas state bank for itself and as Administrative Agent for Amarillo National Bank as a lender and Whitney Bank as a Lenders are the Pre-Petition Lenders and DIP Lenders (collectively the "Lenders")

as is provided in the Sale Procedures Order. The Deposit must be received no later than 1 business day prior to the Offer Deadline (defined hereinbelow). The Escrow Agent shall promptly refund deposits held by any Qualified Buyer whose offer is not accepted.

iii. <u>Offer Deadline</u> Each Qualified Offer to purchase the Property must be delivered in written and electronic form (where available) to:

Counsel to the Debtor:
Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218
Email:rbattaglialaw@outlook.com

And

Debtor's Broker:
CBRE, Inc.
Attn: Scott Herbold, First Vice President
200 Concord Plaza, Suite 800
San Antonio, TX 78216
Tel. No. (210) 507-1120
Email: Scott.Herbold@cbre.com

so as to actually be received no later than 4:00 p.m. (prevailing Central Time) on the date established by the Court in the Sale Procedures Order (the "**Offer Deadline**").

iv. <u>Purchase and Sale Agreement</u> The Debtor will submit a form of purchase and sale agreement (the "**PSA**") to the Court for approval not later than 24 hours prior to the hearing on the Sale Procedures Motion. Each offer to purchase the Property must include (i) a written and signed irrevocable and binding purchase and sale agreement containing substantially the same terms and conditions as the PSA (as submitted the "**Modified PSA**") along with a blacklined copy of the Modified PSA showing any revisions to the PSA. The Debtor, in consultation with the Lenders, shall determine whether any Modified PSA that modifies the PSA in any material respect is a Qualified Offer.

A Modified PSA shall:

1. Provide for a purchase price in an amount in excess of One Hundred Million Dollars ($100,000,000);

2. Not contain any contingencies for the Qualified Buyer's ability to obtain financing and shall be for all cash payable in full upon closing;

3. Provide for an inspection period of not more than 21 days from

the date of entry on the Court's docket of the Sale Order (the "Inspection Period");

4. Not contain any condition to closing on the receipt of any third party approval or any organizational approvals to make its competing bid and to enter into and perform the Modified PSA (excluding approvals required by the Bankruptcy Court or any governmental or regulatory agency);

5. Provide that the Qualified Offer is irrevocable;

6. Acknowledge that the Qualified Buyer has: (x) had the opportunity to conduct its own due diligence and independent review of the Property and associated assets and financial information; and (y) relied solely upon its own due diligence, and not any oral or written statements of the Debtor, its professionals, or any other third party;

7. If applicable, identify with particularity each and every proposed assumed contract and lease;

8. Provide that Two Million Dollars ($2,000,000.00) of the Deposit shall be non-refundable upon the Sale Order approving the sale of the Property to the Purchaser (defined hereinbelow) becoming a Final Order[4] and further provide that the balance of the Deposit shall be non-refundable upon expiration of the Inspection Period. The Purchaser shall forfeit the non-refundable portion of the Deposit if the Purchaser (x) withdraws the bid before the consummation of the sale contemplated by the Modified PSA, or (y) breaches the Modified PSA. The Deposit shall be returned to the Purchaser (unless such Purchaser has forfeited its Deposit) in the event the Debtor defaults in its obligations under the Modified PSA. The Deposit will not be required to be maintained in an interest bearing account, but any interest earned on any Deposit will be remitted/applied as provided for in the Modified PSA.

9. Provide for a closing date seven (7) days after the later to occur of the Sale Order becoming a Final Order; or the expiration of the Inspection Period (the "**Closing Date**").

c. **Auction Process** – If the Debtor receives more than one Qualified Offer, the Debtor will conduct a live public outcry auction (the "**Auction**") on a date determined by the Court at the Sale Procedures Hearing. The Auction will be held in Courtroom 1 at the United States Bankruptcy Court, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., Austin, TX, before the Honorable

---

[4] A Final Order is an Order which has not been stayed or vacated and as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

Tony Davis, United States Bankruptcy Judge.

d.  **Notice of Auction** – Within one business day of this order, the Debtor shall serve by first class mail, postage prepaid, copies of this Sale Procedures Order upon the Notice Parties.

e.  **Participation** Only Qualified Buyers shall be entitled to participate in the Auction, and each Qualified Buyer shall appear in person at the Auction, or through a duly authorized representative. At least one (1) day prior to the commencement of the Auction, each Qualified Buyer must confirm in writing that it will participate in this Auction; provided, however that in the event a Qualified Buyer does not attend the Auction, the relevant Qualified Offer shall nonetheless remain fully enforceable against that Qualified Buyer in accordance herewith.

f.  **Anti-Collusion** At the commencement of the Auction, each Qualified Buyer shall be required to confirm that it has not engaged and will not engage in any collusion with any other Qualified Buyer with respect to the bidding or the Sale.

g.  **Conduct of Auction** The Auction will be conducted openly with the proceeding being conducted on the Court's record and each Qualified Buyer being informed of the terms of the previous bid.

h.  **Bidding** The Auction will commence with the highest Qualified Offer and continue in increments of not less than $500,000 until each Qualified Buyer makes its final offer. Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.  At the conclusion of the bidding, the Court will announce its determination as to the person or entity (the "**Successful Bidder**") submitting the highest or best bid for the Property (the "**Successful Bid**"). In making that determination, the Court will consider, among other things, the total consideration to be received by the Debtor's estate after taking into account the payment of any fees, commissions or deductions to the purchase price provided for in the Modified PSA, if applicable.

i.  **Court Approval** The Debtor will be deemed to have accepted the Successful Bid only when the Court has approved such Bid at the Sale Hearing. Upon failure to consummate the Sale because of a breach or failure on the part of the Successful Bidder, the Debtor may select, in its business judgment, the next highest or otherwise best auction bid from a Qualified Buyer to be the Successful Bid without further order of the Court. By making a Bid, a Qualified Buyer shall be deemed to have agreed to keep its offer open until the consummation of the Sale.

## Sale Hearing

12.     By this Motion, the Debtor requests that the Court set a hearing (the "**Sale Hearing**") on an expedited basis at which the Debtor will ask the Court to enter an order (the "**Sale Order**") acceptable to the Debtor, the Lenders and the Successful Bidder (the "**Purchaser**"), including the follow terms:

    a.  approving the Successful Bid and the sale of the Property to the Purchaser pursuant to under 11 U.S.C. 363, free and clear of all Claims and Interests, which Claims and Interests will attach to the proceeds of the sale to Purchaser with the same validity and in the same order of priority as they attached to the Property prior to the Sale, if not paid at closing;

    b.  authorizing the Debtor and its authorized representatives to take any and all actions necessary to consummate the sale to the Purchaser;

    c.  authorizing the Debtor to pay all costs of closing, pro rations, broker's fees and commissions;

    d.  authorizing the Debtor to pay the liquidated and undisputed amount of the Lender's secured claims, with any balance of the Lenders' claim to be secured by a lien on the proceeds of the sale in the same priority as they attached to the Property prior to the Sale; and

    e.  approving the assumption and assignment of executory contracts and leases identified in the Successful Bid to be assigned to the Purchaser pursuant to 365 of the Bankruptcy Code;

13.    The Debtors request that the Court schedule the Sale Hearing within two business day following the Offer Deadline.

## Closing

14.    The closing shall take place in accordance with terms of the Successful Bidder's Modified PSA.

## The Sale Procedures are Appropriate

15.    As indicated above, the Debtor requests that the Court approve the Sale Procedures in their entirety.  This case presents the unusual circumstance where the informal and targeted sales efforts undertaken by the Debtor have produced multiple cash offers from financially qualified buyers, each provided for quick closing with limited conditions to closing.  The Debtors and their Brokers do not believe that further extensive marketing to "clear the market" would produce a superior group of bidders or a higher purchase price.

16.    Moreover, the purchase prices indicated by the offers received to date validate the likelihood that the offer which will result from the Sale Procedures proposed in this Motion will

substantially exceed all of the debts and claims against the Debtor.  Based upon those offers, the minimum offer required to meet the criteria as a Qualified Offer is $100 million, a sum which will satisfy all claims against the Debtor.

### The Proposed Sale of the Property is Within Debtor's Sound Business Judgment.

17.     Bankruptcy Code section 363(b)(1) provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate … ." Bankruptcy Code section 105(a) provides in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

18.     A sale of a debtor's assets should be authorized pursuant to Bankruptcy Code section 363 if a sound business purpose exists for doing so *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996). Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See Comm. of Equity Sec. Holders v. Lionel Corp. ( In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145–47 (3d Cir. 1986) (adding "good faith" requirement to *Lionel's* test).

19.     The Debtor believes the proposed Sale is the best way to preserve the value of the Property and maximize the value of Debtor's estate for the benefit of Debtor's creditors and other parties in interest.

### The Sale of the Property Satisfies the Sound Business Purpose Test.

20.     There is more than adequate business justification to sell the Property to the Purchaser. As set forth above, the Debtor believes the proposed sale to the Purchaser in accordance with the

procedures set forth in the Sale Procedures will maximize the recovery to the estate. *See In re Tempo Technology Corp.*, 202 B.R. 363 (D. Del. 1996), *aff'd*, 141 F.3d 1155 (3d Cir. 1998) (sale of substantially all of a chapter 11 debtor's assets pursuant to a section 363(b) motion where the debtor "faced a severe cash shortfall and had no readily available source of investment capital or loans," and would shortly have run out of cash absent the debtor-in-possession financing provided by the prospective purchaser); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 177 (D. Del. 1991) (affirming bankruptcy court's approval of sale of substantially all assets where debtor would have been "in liquidation mode if required to delay a sale until after filing a disclosure statement and obtaining approval for a reorganization plan"); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396 (Bankr. W.D. Pa. 1991) (bankruptcy court granted expedited hearing on 363(b) motion based on "deterioration" of debtor's assets); *Coastal Indus., Inc. v. IRS (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366–69 (Bankr. N.D. Ohio 1986) (approving expedited 363(b) sale five weeks post petition to buyer with "the name recognition required by [the debtor's] customers" where debtor was suffering operating losses and lacked financing to continue its operations).

21.     Based upon an analysis of Debtor's ongoing and future business prospects, the Debtor's management and Brokers have concluded that, given the Debtor's continuing cash losses, its inability to obtain additional financing, the lack of operations and operating income, the best way to maximize the value of Debtor's estate is to sell its Property, thereby avoiding a liquidation sale of Debtor's Property at a depressed price.

22.     The Debtor believes that the Sale Procedures proposed herein and the resulting offer generated thereby will enable the Debtor to maximize the value of the Property.  Moreover, by selling the Property now, the Debtor will relieve itself of certain ongoing costs and expenses, thereby minimizing administrative expenses and maximizing creditor recoveries. Accordingly, well-articulated business reasons exist for approving the Sale, such that the "business purpose" test

under Bankruptcy Code section 363 is met. *See Lionel, 722 F.2d at 1071* ("[M]ost important []

perhaps, [is] whether the asset is increasing or decreasing in value.").

### The Consideration Offered by Purchaser is Fair and Reasonable.

23.    Debtor submits that a sale of the Property pursuant to the Successful Bid will provide

fair and reasonable consideration to Debtor's estate. The Debtor anticipates that the Modified PSA

will provide for the payment of fair and reasonable value of the Property and in any event will generate

a purchase price in excess of $100 million.

24.    Moreover, to dispel any doubt, the Successful Bid will have been subjected to a market

check through the solicitation of competing bids, thereby ensuring the Debtor will receive the highest

and best value for the Property. Consequently, the fairness and reasonableness of the consideration to

be received by Debtor will ultimately be demonstrated by a "market check"—the best means for

establishing whether a fair and reasonable price is being paid. Accordingly, the consideration to be

paid for the Property will be both fair and reasonable and should be deemed to have satisfied the

strictures of Bankruptcy Code section 363(n).

### The APA Was Negotiated in Good Faith.

25.    The Modified PSA is the product of arm's length negotiations between the Purchaser

and Debtor. These negotiations have involved substantial time and energy by the parties and their

professionals, and the APA reflects give-and-take and compromises by both sides.

26.    Moreover, the Sale Procedures ensure a prospective purchaser will not be able to exert

any undue influence over Debtor. Under the circumstances, this Court should therefore find that:

(i) the sale of the Property is the result of good faith arm's length negotiations, and (ii) the Purchaser

is entitled to all of the protections of Bankruptcy Code section 363(m) and (n).

### Adequate Notice

27.    Contemporaneously with the filing of this Sale Procedures Motion, the Debtor is filing

a motion seeking an expedited hearing on the sale procedures set out herein and for the Court to consider and approve the sale of the Property to the Purchaser.

28.     Pursuant to Bankruptcy Rules 2002(m) and 9007, this Court is empowered to enter any order designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent, except as otherwise provided by these rules.

29.     The final element for the approval of a sale under Bankruptcy Code section 363 is the requirement that interested parties receive adequate notice. Given the limited number of creditors and the urgent nature of the relief requested, Debtor intends to serve this Motion  on: (i) the Office of the United States Trustee; (ii) counsel for the Lenders; (iii) all parties asserting liens against the Property; (iv) all entities known to have expressed an interest in a transaction with respect to the Property during the past four months; (vi) all entities known to have an Interest in the Property; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a known interest in the relief requested by the Motion; (viii) all non-Debtor parties to contracts designated as Assumed Contracts; (ix) the all creditors identified on the Debtor's Master Mailing Matrix; and (x)  all other entities that have filed requests for notices pursuant to Bankruptcy Rule 2002 (collectively the "**Notice Parties**").

## The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Liens, Encumbrances, and Interests.

30.     Under Bankruptcy Code section 363(f), a debtor in possession may sell property of the estate free and clear of any lien or interest of an entity in such property if, among other things:

  a.  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

  b.  such entity consents;

  c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  d.  such interest is in bona fide dispute; or

  e.  such entity could be compelled, in a legal or equitable proceeding, to accept a

money satisfaction of such interest.

11 U.S.C. § 363(f).

31.     Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice as justification to approve the sale of the Assets free and clear of Claims and Interests. See 11 U.S.C. § 363(f); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343 (E.D. Pa. 1988) (same).

32.     The Debtor believes that the only entities with liens or potentially lienable claims on the Property are the Lenders and the Debtor's pre-petition general contractor, AP Gulf States, Inc. d/b/a Adolfson & Pete. The Lenders are aware of the proposed sale, and thus, Debtor is confident it will obtain any necessary consent on or before the Sale Hearing, thereby satisfying Bankruptcy Code section 363(f)(2). Moreover, the Debtor submits that one of the subsections of Bankruptcy Code section 363(f) applies, and that all Claims and Interests will be adequately protected by having such Claims and Interests attach to the net proceeds of the sale with the same validity and priority they held prior to the sale, subject to any claims and defenses Debtor may possess with respect thereto. Accordingly, the sale should be approved under Bankruptcy Code section 363(f).

**The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.**

33.     Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if:

a.  the trustee assumes such contract or lease in accordance with the provisions of this section; and

b.  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

34.    Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.
>
> 11 U.S.C. § 365(b)(1).

35.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, and should be given practical, pragmatic construction. *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g. Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *see In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

36.    Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property

assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

37.     As set forth in the Modified PSA, to the extent any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned, the Debtor will cure any such default in connection with the assumption and assignment.

38.     Moreover, Debtor will adduce facts at the Sale Hearing to show the financial wherewithal of the Purchaser, and willingness and ability to perform under the contracts to be assumed and assigned to it.

39.     The Sale Hearing will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of Purchaser to provide adequate assurance of future performance under the contracts to be assumed, as required under Bankruptcy Code section 365(b)(1)(C). The Court should therefore authorize Debtor to assume and assign contracts as set forth herein.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, as Exhibit A approving (a) the Sale Procedures and (b) the form of the PSA. In addition, Debtor respectfully requests that this Court, set a date for the Sale Hearing and at the Sale Hearing, enter an order approving the Modified APA; (b) authorizing Debtor to (i) sell the Property free and clear of all Claims and Interests; and (ii) assume and assign the Assumed Contracts; and (c) granting such other and further relief as is just and proper.

Respectfully submitted this April 11, 2016.

THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
66 Granburg Circle
San Antonio, Texas 78218
Telephone (210) 601-9405
Email: rbattaglialaw@outlook.com


By:  */s/  Raymond W. Battaglia*                
     Raymond W. Battaglia
     Texas Bar No. 01918055

**ATTORNEYS FOR FPMC AUSTIN REALTY
PARTNERS, LP.**


## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list


*/s/ Raymond W. Battaglia*          
Raymond W. Battaglia