IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | BANKRUPTCY NO. 16-10020- |
| FPMC AUSTIN REALTY PARTNERS, LP, | § | |
| | § | CHAPTER 11 PROCEEDING |
| | § | |
| DEBTOR | § | |

**FROST BANK'S SECOND AMENDED EMERGENCY MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO PAY FROST AT SALE CLOSING**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN 21 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Frost Bank and moves for entry of an order authorizing the Debtor to pay Frost its debt, fees, and expenses at closing from the sale proceeds of the Debtor's primary assets (the "Motion"). In support of the Motion, Frost respectfully represents as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On or about December 20, 2013, Frost Bank ("Frost") for itself as a lender and as Administrative Agent for Amarillo National Bank and Whitney Bank as lenders (collectively the "Lenders") made a construction loan to FPMC Austin Realty Partners, LP (the "Debtor") under various loan documents (the "Pre-Petition Loan") in the original principal amount of $63,742,287.00. The interest rate on the Pre-Petition Loan floats daily against the LIBOR rate plus three and one-half percent (3.5%)

3. The Pre-Petition Loan was to be used to construct a medical campus in Round Rock, Texas to be known as Forest Park Medical Center Hospital. In addition to a hospital, the campus plan includes a medical office building and an adjacent parking garage (collectively, the "Property"). The plan was for the Debtor to complete construction and then lease the hospital to an operator.

4. The obligations under the Pre-Petition Loan were secured by all assets of the Debtor, then owned or thereafter acquired, including all products and proceeds and a properly perfected first lien against the Property through a deed of trust.

5. Debtor defaulted on its obligations under the Pre-Petition Loan beginning in or around May of 2015 when construction of the hospital, medical office building and parking garage was not entirely complete. Thereafter, Frost and the Debtor entered into a series of forbearance agreements, the last of which expired on November 30, 2015. Frost has not charged the Debtor default interest at any time.

6. Frost posted the Property for a non-judicial foreclosure sale to be held on January 5, 2016.

7. On January 4, 2016 (the "Petition Date"), the Debtor commenced this case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Accordingly, the foreclosure sale was stayed. The Hospital was leased to a single tenant, but never opened and the MOB is vacant. Accordingly, the Debtor has no cash flow and is entirely unable to meet any financial obligations.

8. As of the Petition Date, the Lenders were owed just over $58 million in principal, interest, fees and expenses.

9. The Debtor continues to operate its business and manage its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditor's committee, trustee, or examiner has been appointed in this Chapter 11 Case.

10. Frost, again for itself and as administrative agent for the Lenders, agreed to extend post-petition financing to the Debtor in an amount not to exceed $1.7 million at ten percent (10%) interest per annum (the "DIP Loan"). The purpose of the DIP Loan was to allow the Debtor to pursue a sale of the Property and pay reasonable and necessary expenses to secure, preserve, and maintain it. The Court approved the post-petition financing and to date, over $1.12 million has been expended for ad valorem taxes, insurance, administrative fees and vendors.

11. As a part of the February 27, 2016 final order authorizing the Debtor's DIP Loan [Doc #49], the Debtor affirmed its pre-petition indebtedness. The final order also stipulated to a Challenge Period of sixty (60) days for objections to the claims or liens of the Lenders, which period has expired. The DIP Loan also provided for a carve-out of certain professional fees.

12. On April 26, 2016, the Court approved sale procedures and set the auction of the Property and the sale hearing for May 13, 2016 ("Sale Hearing"). During the April 26th hearing, the Court requested that Frost file a motion to request payment at closing.

13. The sale procedures as approved require bids of at least $100 million for the Property and more than one qualified bidder is expected to participate. Thereafter, the Debtor filed a motion to sell the Property free and clear to St. David's Healthcare Partnership, L.P., LLP for $115 million thereby supplanting the original auction process with a straight sale. Because the sale price greatly exceeds the claims of the Lenders, the Lenders are oversecured.

14. The Sale Hearing convened on May 13, 2016 as previously noticed and the Court approved the sale to St. David's Healthcare Partnership, L.P., LLP. At the Sale Hearing, the Court instructed Frost to file this Second Amended Motion to set forth the amounts to be paid to Frost and the procedures for same at closing of the sale.

15. Substantially contemporaneously with the filing of this Motion, Frost is filing a motion requesting emergency consideration for the relief herein in order to allow the closing on the sale of the Property to proceed as planned on Tuesday, May 17, or Wednesday, May 18, 2016.

## RELIEF REQUESTED

16. The sale of the Property will be approved by a Court order pursuant to §363 of the Bankruptcy Code. Frost has consented to the sale so long as it is paid in full at closing.

17. The Debtor has affirmed the debt and does not oppose the relief requested herein. Because the Challenge Period has expired without objection, no creditor or party in interest can dispute Frost's liens and claims. Because the Debtor has no business operations and Frost is paying all post-petition fees and expenses, there is no reason to not pay Frost at closing.

18. Accordingly, the only issue is the exact amount to be paid at closing. The Pre-Petition Loan accrues interest at a rate that is tied to LIBOR and therefore is subject to

fluctuation. As of the date of this Second Amended Motion, the interest on the Pre-Petition Loan amount accrues at $6,602.34 per day. However, closing is expected to occur on Tuesday or Wednesday of next week and the LIBOR rate may change, thereby changing the daily rate.[1] Frost will issue a payoff letter to the title company in advance of the closing, which will provide the exact amount due at closing. Frost requests entry of any order authorizing payment of the Pre-Petition Loan amount as set forth below subject to adjustment to account for the accrual of additional interest tied to the LIBOR rate as will be further set forth in Frost's payoff letter and closing instructions to be delivered to the Debtor's title company and escrow agent.

19. The Pre-Petition amounts owed by the Debtor as of the time of filing this Motion are as follows:

| | |
|---|---|
| Principal: | $57,577,110.52 |
| Interest: | $1,262,858.31[2] |
| Late Fee: | $1,250.00 |
| Agency Fee: | $30,000.00 |
| Appraisal: | $7,525.00 |
| Attorney Fees and Expenses: | $74,963.68 (August-December) |

$58,953,707.51 Total Pre-Petition Debt[3]

20. The DIP Loan is capped at $1.7 million and expires June 30, 2016. The DIP Loan interest is a fixed rate of 10% with a per diem interest accrual of $328.03 per day. Below is the amount Frost requests the Court to approve to be paid at closing on account of the DIP Loan

---

[1] The interest rate on the Pre-Petition Loan is the Libor 3 month rate plus 3.50 % such that the per diem rate floats somewhat but is roughly $6,612.33 per day.

[2] This amount is the interest accrued through May 13, 2016. Interest accrues at a fluctuating daily rate tied to LIBOR. Currently, the per diem is $6,602.34. If the per diem does not change, there will be approximately $33,011.70 in additional interest owed by the time of closing on May 18.

[3] Subject to additional accrued interest between May 13 and the day of closing as described elsewhere herein.

subject to any minor adjustments set forth in Frost's payoff letter and closing instructions to the Debtor's title company and escrow agents.

| | |
|---|---|
| Principal: | $1,180,900.04 |
| Interest: | $3,907.58[4] |
| Attorney Fees: | $60,078.85 |

$1,244,886.47 Total DIP Loan Debt[5]

21. The amount for attorneys' fees above in the DIP Loan includes an estimated $10,000.00 in additional attorney fees and expenses before the closing and an additional $5,000.00 post-closing, which is the same amount provided in the DIP Loan for the Debtor's counsel.

22. Frost is entitled to recover its fees and expenses pursuant to Section 506(b) of the Bankruptcy Code. Frost requests that the Court authorize its pre- and post-petition attorney fees and expenses for payment at closing as set forth above as adjusted in Frost's payoff letter and closing instructions on the date of closing. Frost submits that its attorney fees and expenses, both pre- and post-petition are per se reasonable and necessary given the complexities of the case.

23. Accordingly, Frost requests that it be paid the amounts set forth herein at closing, subject to minor adjustment for daily interest accruing between today and the date of closing to be set forth in Frost's payment letters.

24. Frost requests that the order granting this Motion not be stayed by Rule 6004(h) to allow payment to be made regardless of how quickly the Property closing occurs after the sale hearing.

---

[4] This amount is the interest accrued through May 13, 2016. At the daily rate of $328.03, Frost expects an additional $1,640.15 of interest to be owed by the time of closing on May 18.

[5] Subject to additional accrued interest between May 13 and closing as described elsewhere herein.

WHEREFORE, Frost Bank respectfully requests that the Court enter an order authorizing the Debtor to pay Frost from the sale proceeds at closing in such amounts as described above and as will be more particularly detailed in a payoff letter, including its pre- and post-petition principal, interest, fees and expenses including those of their counsel, and for such other and further relief as may be just and proper, at law or in equity.

Respectfully submitted May 13, 2016.

                                Respectfully submitted,

                                */s/ Linda S. LaRue*
                                Michael J. Quilling
                                State Bar No 16432300
                                Linda S. LaRue
                                State Bar No. 24046269
                                Timothy A. York
                                State Bar No. 24035719

                                Quilling Selander Lownds, Winslett & Moser, P.C.
                                2001 Bryan Street, Suite 1800
                                Dallas, Texas  75201
                                (214) 871-2100 – Telephone
                                214) 871-2111 – Facsimile
                                mquilling@qslwm.com
                                llarue@qslwm.com
                                tyork@qslwm.com

                                ATTORNEYS FOR FROST BANK

**CERTIFICATE OF CONFERENCE**

      I hereby certify that counsel for the Debtor and I discussed payment of principal and interest to the secured lender at closing and counsel is not opposed. As of the filing of this motion, counsel had not had the opportunity to review the motion regarding the payment of pre- and post-petition fees and expenses.

                                              */s/ Linda S. LaRue*
                                              Linda S. LaRue

**CERTIFICATE OF SERVICE**

      A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system. I further certify that it has been transmitted by first class mail to the parties on the attached service list.

                                                                         */s/ Linda S. LaRue*
                                                                           Linda S. LaRue

                                                                      4832-7031-1217, v. 2