# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-10020-TMD |
| FPMC AUSTIN REALTY | § | |
| PARTNERS, LP, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | |

## MOTION FOR ORDER TO SHOW CAUSE

Reorganized Debtor FPMC Austin Realty Partners, LP ("FPMC Austin" or "Debtor") by and with its General Partner, Howard Marc Spector ("Spector") as receiver of Neal Richards Group Austin Development, LLC ("NRG Austin") (FPMC Austin and Spector/NRG Austin, together "Movants"), respectfully request that the Court enter an order requiring glendonTodd Capital, LLC ("GTC") and Todd Furniss ("Furniss") to appear and show cause why they should not be held in contempt and sanctioned for their direct violation of the Court's orders, and in support shows as follows:

## SUMMARY

1.  On September 9, 2017, the 68th Judicial District of Dallas County, Texas appointed Spector as the receiver of Neal Richards Group, LLC ("NRG") and several affiliates including NRG Austin, the general partner of FPMC Austin.[1] Spector has learned that, during the Chapter 11 bankruptcy and while the Debtor was under the control of Todd Furniss ("Furniss"), Furniss wired an undisclosed $4,025,000 to his related entity, glendonTodd Capital LLC ("GTC"), including $2,988,982 directly from the Debtor-in-possession account. Furniss wired most of the funds to GTC at the same time he was seeking approval to pay a purported

---

[1] See **Exhibit 1**, Order Appointing Temporary Receiver, Ordering Delivery and Turn Over of Receivership Assets to the Receiver, and Granting Temporary Injunction, and **Exhibit 2**, Order Granting Cross-Plaintiff Neal Richards Group, LLC's Unopposed Verified Motion for the Expanded Appointment of Receiver Over Affiliated Entities.

$2,875,000 "expense" to GTC. In its March 10, 2017, Memorandum Opinion, the Court disallowed the expense, but, unbeknownst to the Court, GTC had already taken the funds. Movants believe that these actions were taken without the knowledge or consent of the Court and were inconsistent with the Court's rulings and the information provided to the Court. Movants believe it is the duty of counsel as officers of the Court to make the Court aware that its orders appear to have been violated and that prior testimony may have been false. Movants request the Court hold Todd Furniss and GTC in contempt for violating the Court's orders as set forth herein.[2]

## BACKGROUND FACTS

2. On January 5, 2016 (the "Petition Date"), the Debtor commenced this case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtor owned a short-term acute care hospital and medical office building, together with a 445-stall adjacent parking garage (collectively the "Property") and various pieces of personal property.[3]

3. On May 17, 2017, Debtor sold the Property and, after payment of all debt, received $52,517,827.70 in net cash from the sale.[4]

4. On July 26, 2016, NRG filed an Application for Allowance of Administrative Expenses Incurred in Making a Substantial Contribution ("Application") [Dkt. No. 145]. NRG sought the allowance of an administrative expense claim in the amount of $2,875,000 for allegedly making a substantial contribution to the bankruptcy proceeding. NRG contended that it

---

[2] Nothing in this Motion is intended to imply that Debtor's prior counsel had any involvement in the undisclosed and unauthorized conduct.

[3] Memorandum Opinion, p. 1-2. Dkt. No. 287.

[4] FPMC Austin Realty Partners' Report of Sale [Dkt. No. 127]. *See also* May 2016 Report of Operations, reflecting available cash. Dkt. No. 146.

{01462/0001/00217978.3}

incurred the $2,875,000 "expense" "through the extraordinary services provided by GTC and its CEO, Furniss, in negotiating and closing the sale of the Debtor's main assets."[5]

5. On August 29, 2016, the Court granted Debtor's Motion to Approve Interim Distributions to Partners, which authorized a payment of $1,036,018.21 to NRG Austin [Dkt. No. 178]. On September 12, 2016, Debtor wired this distribution to NRG Austin.[6] Furniss controlled the NRG Austin account and immediately wired the $1,036,018.21 distribution to GTC.[7] Consequently, at least part of the purported "expense" that was the subject of the Application was paid to GTC on September 12, 2016, six months prior to the Court's ruling on the Application.

6. On September 21, 2016, NRG filed the Proffer of Testimony of Todd Furniss ("Furniss Proffer") [Dkt. No. 222]. In the Furniss Proffer, Furniss testified that NRG frequently failed to pay its $125,000 a month consulting fee or only paid a portion of the fee. Furniss, however, omitted the fact that, just nine days earlier, GTC had received $1,036,018.21 from NRG Austin.[8]

7. On September 22, 2016, the Court held a hearing on the Application. At the hearing, Furniss was questioned about how much NRG Austin was scheduled to receive and provided the following testimony.

> Q: And then subsequent – pursuant to the promoted interest, if it gets paid out without a substantial contribution allocation, how much is the promoted interest scheduled to be?
>
> A: I think it's approximately another 4 million dollars.

---

[5] Dkt. No. 145, p. 1.

[6] *See* **Exhibit 3** (NRG Austin Bank Statement, Sept. 2016).

[7] *Id.*

[8] Furniss Proffer. Dkt. No. 222.

{01462/0001/00217978.3}

Q: Another 4 million dollars. Now ---

A: And to be clear, ***glendonTodd didn't get any of that***.[9]

But, GTC did receive funds directly from NRG's distribution. Just ten days earlier, GTC received $1,036,018.21 directly from NRG Austin, which was NRG's entire September 12, 2016, distribution. It is unknown how Furniss could testify that GTC had not received any of NRG Austin's distribution when he orchestrated a wire transfer of the entire distribution that had been made as of that date.

8. On December 2, 2016, Furniss submitted his Declaration of Todd Furniss in Support of Confirmation of the Plan of Reorganization [Dkt. No. 278]. Furniss testified that FPMC Equity Holders "shall receive distributions in accordance with the Partnership Agreement after the payment of all other Allowed Claims."[10] Furniss also testified that "all payments made or to be made by the Debtor to its retained professional for services or for costs and expenses in or in connection with this Case, or in connection with the Plan and incidental to this Case are subject to approval of the Court."[11]

9. On December 6, 2016, the Court entered the Findings of Fact, Conclusions of Law, and Order Confirming Amended Plan of Reorganization ("Confirmation Order") [Dkt Nos. 280 and 260]. The Confirmation Order provided that the FPMC Equity Holders "shall receive distributions in accordance with the Partnership Agreement after the payment of all other Allowed Claims."[12]

---

[9] Dkt. No. 244, p. 118 (emphasis added).

[10] Dkt. No. 278, p. 4.

[11] Dkt. No. 278, p. 6. *See also* 11 USC § 1129(a)(4) (providing that all expenses of a confirmed plan are subject to approval of the Court).

[12] Dkt. Nos. 280 and 260, p. 11. The Confirmation Order also provides that "any payment made or to be made for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to the approval of, this Court as

10. Instead of distributing funds in accordance with the Plan or waiting until the Court's ruling on NRG's Application, Furniss wired the remaining portion of the disputed $2,875,000 to GTC on February 27, 2017.[13] No one informed the Court that GTC had already received the disputed $2,875,000 "expense" before the Court ruled on the Application.

11. On March 10, 2017, the Court denied the Application and ruled that the fee sought by GTC was neither "actual" nor "necessary." [Dkt. No. 287]. GTC did not refund the funds taken in September 2016 or February 2017. Instead, Furniss decided to immediately transfer more money to GTC.

12. On March 13, 2017, only three days after the Court's ruling, Furniss caused the Debtor to wire another $1,150,000 to GTC.[14]

13. On April 14, 2017, Furniss and Mary Hatcher resigned from their positions with NRG and from their positions with all affiliated entities, including NRG Austin.

14. On April 19, 2017, the Debtor filed a Motion for Final Decree Closing Bankruptcy Case and advised the Court that "[a]ll deposits and payments required by the chapter 11 plan have been made, and the managing member of the Reorganized Debtor's general partner will continue to manage the Reorganized Debtor's business operations and administer or deal with property under the terms of the Plan."[15]

---

reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4)." Dkt. 280, p. 5. The Court also retained broad jurisdiction to enforce any orders related to the Plan. *See* Dkt. 260, pp. 15-16 and Dkt. 280, p. 22.

[13] $1,838,982 was wired from the Debtor-in-possession account on February 27, 2017. *See* **Exhibit 4** (Feb. 2017 Bank Statement for FPMC Austin). The February 27, 2017 payment plus the September 12, 2016 payment equal $2,875,000, the exact amount that GTC claimed it was entitled to receive under the after-the-fact created invoice from June 2016.

[14] **Exhibit 5** (March 2017 Bank Statement for FPMC Austin).

[15] Dkt. No. 289, p.3.

15. Despite the representations to the Court, Debtor never made the required Plan distributions to NRG Austin because Furniss paid at least $4,025,000 to GTC. Under the Plan, NRG Austin was entitled to receive at least $5,208,147, but, because of the payments to GTC, NRG Austin only received $1,183,148.[16]

16. On April 20, 2017, the Reorganized Debtor filed its Chapter 11 Post Confirmation Report, which is signed by GTC CFO Mary Hatcher. [Dkt. No. 290]. Because the report only covered the last quarter of 2016, Furniss and Hatcher did not disclose the $2,988,982[17] transferred to GTC in February and March of 2017. [Dkt. No. 290]. No further reports were filed with the Court.

17. On July 12, 2017, the Court entered its Final Decree Closing Bankruptcy Case.[18]

## MOTION FOR CONTEMPT AND/OR SANCTIONS

A. **Contempt Under 11 U.S.C. § 105(a)**

18. Section 105(a) of the Bankruptcy Code provides:

The Court may issue *any order, process, or judgment that is necessary or appropriate* to carry out the provision of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination *necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.*[19]

11 U.S.C. § 105(a) (emphasis added).

---

[16] On December 30, 2016, the Debtor distributed $1,183,148.00 to NRG Austin, which appears to be the only distribution that Furniss did not divert to GTC. *See* Dkt. 290, p. 3.

[17] The first payment diverted to GTC was wired to NRG Austin and then immediately wired to GTC. The February and March 2017 payments total $2,988,982 and were taken directly from the Debtor-in-possession account.

[18] In the Final Decree, the Court stated that it "retains the right under 11 U.S.C. § 350(b) to reopen the Case if circumstances so require." Dkt. No. 294.

[19] 11 U.S.C. § 105(a) (emphasis added).

19.     Bankruptcy courts have noted that 11 U.S.C. § 105(a) is an "intentionally broad grant of authority" to bankruptcy courts "in order to facilitate the orderly administration of bankruptcy cases."[20] The Supreme Court has emphasized that, under § 105, bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent the abuse of process.'"[21]

20.     Sanctions for civil contempt may be imposed for either of two purposes: (i) to coerce compliance with a court order or injunction; or (ii) to compensate for damages sustained because of the contemptuous conduct.[22] Courts have used § 105 to remedy violations of confirmed plans.[23]

**B.     Bankruptcy Court's Inherent Powers to Sanction**

21.     A bankruptcy court has inherent power to award sanctions for bad-faith conduct in a bankruptcy court proceeding.[24] The bankruptcy court must make "a specific finding that [the party] engaged in bad faith conduct" before imposing sanctions under its inherent authority.[25] However, "[w]hen bad faith is patent from the record and specific findings are

---

[20] *In re Howell,* 4 B.R. 102, 105 (Bankr. M.D. Tenn. 1980); *see also In re Caro*, 410 B.R. 506, 539 (Bankr. S.D. Tex. 2009) ("Section 105(a) provides that the court may issue *any* "judgment" necessary or appropriate to carry out requirements of the Bankruptcy Code. Section 105 does not require a court to use the least restrictive means to carry out the requirements of the Code.").

[21] *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 373-76 (2007).

[22] *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir.2000); *accord Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance."); *In re San Angelo Pro Hockey Club, Inc*., 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003) (recognizing that the bankruptcy court may award damages in the form of civil contempt sanctions pursuant to its authority under section 105(a) of the Bankruptcy Code.).

[23] *In re Caro*, 410 B.R. 506, 540 (Bankr. S.D. Tex. 2009).

[24] *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995).

[25] *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008).

unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred."[26] Moreover, violating a court order can constitute bad faith.[27]

**C.     Grounds for Contempt and Sanctions**

22.     Movants believe that Furniss and GTC misled the Court, failed to disclose material facts, and then disobeyed the Court's orders through the following actions:

    a.  While the Application was pending, which sought the payment of $2,875,000 expense to GTC, Furniss caused FPMC Austin and NRG Austin to pay the disputed administrative expense to GTC. The Court's 27-page Memorandum Opinion on the Application was treated as largely meaningless and completely ignored. Based on testimony at the hearing, the Court believed that, "[i]f the Application is not granted, the $2.875 million will be paid to the limited partners and the General Partner under the last tranche of the Limited Partnership Agreement waterfall."[28] However, unbeknownst to the Court, this was not true. As of the date of the hearing, Furniss had already diverted $1,036,018.21 from NRG Austin to GTC. By the time the Court ruled on the Application, Furniss had paid the entire $2,875,000 "expense." This blatant, bad faith disregard of the Court's ruling should not be tolerated. If GTC and Furniss are not held accountable, the Application was a waste of the parties' time, effort, and money and the Court's resources.

---

[26] *Blanco River, LLC v. Green*, 457 F. App'x 431, 438 (5th Cir. 2012) (quoting *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999)).

[27] *Sandifer v. Gusman*, 637 F. App'x 117, 122 (5th Cir. 2015).

[28] Dkt. No. 287, p. 17.

b. Three days after the Court's ruling, Furniss caused FPMC Austin to pay another $1,150,000 to GTC. In other words, even after the Court explained why GTC was not entitled to the alleged administrative expense, Furniss decided to pay himself another $1,150,000.

c. GTC and Furniss concealed the fact that GTC received $1,036,018.21 of the disputed administrative expense on September 12, 2017. When Furniss signed his September 21, 2017 Proffer [Dkt. No. 222], Furniss never disclosed the critical fact that GTC had received $1,036,018.21 nine days earlier. At the hearing on September 22, 2017, Furniss testified that GTC "didn't get any of" NRG Austin's promoted interest even though, ten days earlier, GTC had received $1,036,018.21 directly from NRG Austin.

d. Furniss submitted a declaration [Dkt. 278] that stated, under oath, that FPMC Equity Holders "shall receive distributions in accordance with the Partnership Agreement after the payment of all other Allowed Claims."[29] Furniss also testified that "all payments made or to be made by the Debtor to its retained professionals for services or for costs and expenses in or in connection with this Case, or in connection with the Plan and incidental to this Case are subject to the approval of the Court."[30] In reality, as of the date of the declaration, GTC had received a $1,036,018.32 "fee" and Furniss knew or should have known that he intended to pay additional monies to GTC rather than distribute funds in accordance with the Plan.

---

[29] Dkt. No. 278, p. 4.

[30] Dkt. No. 278, p. 6

e. The Confirmation Order provided that the FPMC Equity Holders "shall receive distributions in accordance with the Partnership Agreement after the payment of all other Allowed Claims."[31] Under the Plan, NRG Austin was entitled to receive at least $5,208,147, but, because of the payments to GTC, NRG Austin only received $1,183,148. Furniss and GTC violated the Confirmation Order by distributing funds to GTC, an entity that was not entitled to receive anything under the Plan.

f. The April 19, 2017 Motion for Final Decree Closing Bankruptcy Case, which was the basis on which the Court closed the case, stated that "[a]ll deposits and payments required by the chapter 11 plan have been made."[32] This statement was inaccurate because NRG Austin did not receive all of the payments it was entitled to receive under the Plan.

23. As the Court recognized in its March 10, 2017 Memorandum Order [Dkt. No. 280], Furniss was in control of the Debtor-in-possession and owed fiduciary duties to FPMC Austin and NRG Austin.[33] As he testified at the September 22, 2016 hearing, Furniss is a lawyer by training and knew or should have known that he owed a duty of candor to the Court. Allowing the person in control of the Debtor-in-possession to divert more than $4,000,000 in unauthorized and undisclosed payments to his affiliated entity during the pendency of the bankruptcy case should not be tolerated.

---

[31] Dkt. Nos. 280 and 260, p. 11.

[32] Dkt. No. 289.

[33] Dkt. No. 287, p. 19.

## RELIEF REQUESTED

24. Movants request that the Court require Furniss and GTC to appear and show cause as to why they should not be held in contempt.

Dated: May 31, 2018

    Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON, LLP**

By: /s/ Stephen W. Lemmon
Stephen W. Lemmon
State Bar No. 12194500
Rhonda B. Mates
State Bar No. 24040491
811 Barton Springs Road, Suite 811
Austin, Texas 78704
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com
mates@slollp.com

    and

**REESE MARKETOS LLP**

Joel W. Reese
State Bar No. 00788258
Tyler J. Bexley
State Bar No. 24073923
750 N. Saint Paul St., Suite 600
Dallas, Texas 75201-3201
214.382.9810 telephone
214.501.0731 facsimile
joel.reese@rm-firm.com
tyler.bexley@rm-firm.com

**ATTORNEYS FOR HOWARD MARC SPECTOR, RECEIVER FOR FPMC AUSTIN REALTY PARTNERS, LP AND NEAL RICHARDS GROUP, LLC**

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, a true and correct copy of this pleading was served, via the Court's CM/ECF notification system, on all parties registered to receive notice, including the following:

Bruce W. Akerly on behalf of Debtor FPMC Austin Realty Partners, LP
bakerly@mamlaw.com, lsapp@mamlaw.com;nhernandez@mamlaw.com

Bruce W. Akerly on behalf of Interested Party gLendontodd Capital LLC
bakerly@mamlaw.com, lsapp@mamlaw.com;nhernandez@mamlaw.com

Bruce W. Akerly on behalf of Interested Party Todd Furniss
bakerly@mamlaw.com, lsapp@mamlaw.com;nhernandez@mamlaw.com

Joel B. Bailey on behalf of Interested Party Neal Richards Group, LLC
Joel@HedrickKring.com, Josh@HedrickKring.com

Raymond W. Battaglia on behalf of Debtor FPMC Austin Realty Partners, LP
rbattaglialaw@outlook.com

Raymond W. Battaglia on behalf of Interested Party Kreager Mitchell, PLLC
rbattaglialaw@outlook.com

Deborah A. Bynum on behalf of U.S. Trustee United States Trustee - AU12
deborah.a.bynum@usdoj.gov

J. Mark Chevallier on behalf of Interested Party Texas Capital Bank, N.A.
mchevallier@mcslaw.com

Brian Talbot Cumings on behalf of Attorney Graves Dougherty Hearon and Moody P.C.
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Amaja, Ltd.
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Dallas Plastic Surgery Institute
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party FMARR Investment Group, LLC
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Peters Group Family Management
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Serota Limited Family Partnership
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Spice 4 Management, Ltd
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party TVKV Investments
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party The Arthur Clay Group, LLC
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Aravind Sankar
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Bryan Kansas
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party David Dodgin
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Eric Heinrich
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Ira Lown
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party James Golab
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Lisa Hansard
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Mark Perella
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Mark Sherman
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Michael Putney
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Michelle Hudson
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Nancy Marquez
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Oscar Tamez
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Sherry Neyman
bcumings@gdhm.com, krisinger@gdhm.com

Brian Talbot Cumings on behalf of Interested Party Steve Wilson
bcumings@gdhm.com, krisinger@gdhm.com

Lee Gordon on behalf of Creditor Williamson County, Texas
vcovington@mvbalaw.com;kmorriss@mvbalaw.com;cary.cain@mvbalaw.com;bankruptcy@mvbalaw.com

Marcus A. Helt on behalf of Creditor Adolfson & Peterson
mhelt@foley.com, acordero@foley.com;ggattis@foley.com

Jacob B. Kring on behalf of Interested Party Amaja, Ltd.
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party CH Realty VI/MO Austin FPMC, LP
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Dallas Plastic Surgery Institute
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party FMARR Investment Group, LLC
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Peters Group Family Management
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Serota Limited Family Partnership
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Spice 4 Management, Ltd
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party TVKV Investments
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party The Arthur Clay Group, LLC
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Aravind Sankar
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Bryan Kansas
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party David Dodgin
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Eric Heinrich
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Ira Lown
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party James Golab
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Lisa Hansard
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Mark Perella
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Mark Sherman
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Michael Putney
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Michelle Hudson
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Nancy Marquez
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Oscar Tamez
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Sherry Neyman
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Jacob B. Kring on behalf of Interested Party Steve Wilson
Jacob@HedrickKring.com, Mckenzie@HedrickKring.com

Linda S. LaRue on behalf of Creditor Frost Bank
llarue@qslwm.com, jadams@qslwm.com

Stephen Wayne Lemmon on behalf of Interested Party Howard Marc Spector
lemmon@slollp.com, mates@slollp.com

Francis B Majorie on behalf of Interested Party CH Realty VI/MO Austin FPMC, LP
fbmajorie@themajoriefirm.com, ECFNoticesTheMajorieFirm@gmail.com

Duston K. McFaul on behalf of Creditor Sidley Austin LLP
dmcfaul@sidley.com, txefilingnotice@sidley.com

Kelli S. Norfleet on behalf of Creditor Ascension Health Texas d/b/a Seton Healthcare Family
kelli.norfleet@haynesboone.com

Kelli S. Norfleet on behalf of Creditor Children's Health System of Texas
kelli.norfleet@haynesboone.com

Kelli S. Norfleet on behalf of Interested Party Ascension Health Texas d/b/a Seton Healthcare Family
kelli.norfleet@haynesboone.com

Kelli S. Norfleet on behalf of Interested Party Children's Health System of Texas
kelli.norfleet@haynesboone.com

Peter C. Ruggero on behalf of Interested Party STERIS Corporation
peter@ruggerolaw.com

Lisa K Shimel on behalf of Interested Party Centennial Bank
lshimel@bsblawyers.com, kjones@bsblawyers.com

Don D. Sunderland on behalf of Creditor Amarillo National Bank
dsunderl@mhba.com, krobertson@mhba.com

Eric J. Taube on behalf of Interested Party St. David's Healthcare Partnership, L.P.
eric.taube@wallerlaw.com, sherri.savala@wallerlaw.com;annmarie.jezisek@wallerlaw.com

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov

David Weitman on behalf of Interested Party K&L Gates LLP
david.weitman@klgates.com, greg.sapire@klgates.com

Timothy Andrew York on behalf of Creditor Frost Bank
tyork@qslwm.com, nchancellor@qslwm.com

**16-10020-tmd Notice will not be electronically mailed to:**

Cherry Bekaert LLP
200 South 10th Street
Suite 900
Richmond, VA 23219

Veronica Cruz on behalf of Creditor Children's Health System of Texas
Haynes and Boone, LLP
1221 McKinney Street
Houston, TX 77010

Tyler N. Layne on behalf of Interested Party St. David's Healthcare Partnership, L.P.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Ste 2700
Nashville, TN 37219

John C. Tishler on behalf of Interested Party St. David's Healthcare Partnership, L.P.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Ste 2700
Nashville, TN 37219