IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-10020-TMD |
| FPMC AUSTIN REALTY | § | (Chapter 11) |
| PARTNERS, LP, | § | |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| HOWARD MARC SPECTOR, AS | § | |
| RECEIVER OF NEAL RICHARDS | § | |
| GROUP AUSTIN DEVELOPMENT, | § | **CONTESTED MATTER** |
| LLC, | § | |
| | § | MOTION FOR ORDER TO |
| Movant, | § | SHOW CAUSE (DOC. NO. 311) |
| | § | |
| VS. | § | |
| | § | |
| gLENDONTODD CAPITAL, LLC AND | § | |
| TODD FURNISS, | § | |
| | § | |
| Respondents. | § | |

### MOTION TO RECONSIDER ORDER RULING AND
### ABATING IN PART SHOW CAUSE PROCEEDING
### [RELATED TO D.E. #413]

gLENDONTODD CAPITAL LLC ("**GTC**") and TODD FURNISS ("**Furniss**" and together with GTC, the "**Respondents**") file this *Motion to Reconsider Order Ruling and Abating in Part Show Cause Order* (D.E. #413) (the "**Order**"), as follows:

### Background

1.      On November 2, 2016, the Debtor filed its *Amended Plan of Reorganization* (D.E. #260) (the "**Plan**").   The Plan was confirmed on December 6, 2016 (D.E. #280) (the "**Confirmation Order**").

2.      On or around February 26, 2018, GTC, Neal Richards Group Austin Development, LLC ("**NRG Austin**") and its affiliates, Neil Richards Group Austin LLC, the general partner of NRG Austin (the "**GP**") and the Debtor entered into a *Compromise and Settlement Agreement* (the "**Settlement Agreement**") which stipulated that any and all claims asserted by any party to such Settlement Agreement had to be made to the State Court (as defined herein) in a one-day bench trial on or before July 31, 2018.

3.      On April 18, 2018, Debtor FPMC AUSTIN REALTY PARTNERS, LP (the "**Debtor**" or "**FPMC Austin**"), acting by and through its general partner, Howard Marc Spector as receiver ( the "**Receiver**") of Neal Richards Group Austin Development, LLC ("**NRG Austin**") moved to reopen the above-styled and referenced case (the "**Case**") pursuant to 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010 (D.E. #299).

4.      Notwithstanding, and in violation of, the Settlement Agreement, on May 31, 2018, Movant filed his *Motion for Order to Show Cause* (D.E. #311) (the "**Motion to Show Cause**") in an attempt to establish that Respondents should be held in civil contempt and sanctioned for their direct violation of the Court's orders.

5.      On June 1, 2018, over the objection of Respondents, the Court re-opened the Case (D.E. #314).

6.      A hearing on the Motion to Show Cause was set for July 16, 2018 (the "**Hearing**") (D.E. #328).

7.      On June 29, 2018, Respondents filed their *Objection and Response to Motion for Order to Show Cause* (D.E. #338) (the "**Show Cause Objection**").

8.      On June 29, 2018, the Court entered its *Order Granting Motion for Order to Show Cause* (D.E. #339) (the "**Show Cause Order**") granting, without hearing, the Motion to Show

Cause and cancelling the Hearing.[1]  The Show Cause Order directed that Respondents appear before the Court on August 2, 2108, to "show cause why they should not be held in contempt or sanctioned, or both."  (Show Cause Order at 2).

9.     On July 9, 2018, Respondents filed their *Motion to Reconsider Order Granting Motion for Order to Show Cause* (D.E. #341), which was granted by the Court in and through its *Order Granting Motion to Reconsider* (D.E. #343), in which the Court reinstated the Motion to Show Cause to be heard on August 2, 2018.  This hearing was later reset for August 15, 2018 (*see* D.E. #352).

10.     An initial hearing on the Motion to Show Cause was held on August 15, 2018 (the "**First Hearing**").  At the conclusion of the First Hearing the Court directed the parties to file briefs on the issue of the issue of the validity of the Consents (as defined in the Show Cause Objection) and the authority of the Debtor to make distributions.  The Court further directed that Respondents produce records with respect to the accounting for payments distributed under the Plan, including to GTC.  Both the Court and the Movant stipulated to the accurateness of the accounting, which showed that any remaining distributions made pursuant to the Plan inured to the benefit of the GP (a party not under the jurisdiction of this Court).

11.     A second hearing on the Motion to Show Cause was then held on October 3, 2018 (the "**Second Hearing**") at which the Court heard testimony of Mr. Furniss, Mary Hatcher ("**Hatcher**"), Raymond Battaglia and the Receiver.  At no time did any member, manager (other than Hatcher or Furniss), limited partner or creditor or anyone else with personal knowledge of the matters before the Court testify.  The Second Hearing concluded without the record or proceedings being closed.  The Court indicated that it had "a lot of questions in…notes that I probably want to

---

[1] The Show Cause Order was docketed on July 2, 2018.

direct to counsel, and what might make sense is to if we get a transcript, read that, set this for closing arguments.  And then you guys can argue what you want to argue, I can ask my questions, and I'll see who I agree with, if anyone."  (Tr. Oct. 3, 2018 Hrg. 220, ll 6-12).

12.     However, rather than directing questions to counsel and setting the matter for closing arguments as indicated at the Second Hearing, on November 11, 2018 the Court issued its *Order Granting Motion for Order to Show Cause* (D.E. #377) (the "**Second Show Cause Order**"). The Second Show Cause Order states that "after considering the pleadings, evidence and arguments of counsel, the Court has determined that the motion should be granted..." (Second Show Cause Order at 2).  No argument of counsel was heard by the Court, save and except for any discussions taking place during the Second Hearing.  No questions to be briefed or final arguments to be heard were scheduled or considered by the Court.

13.     In its Second Show Cause Order, the Court directs that Respondents:

> should appear and show cause why this Court should not find that the Receiver has established, by clear and convincing evidence,
>
> 1.     The consents signed by individuals "in their capacity" as managers and members of Neil Richards Group ("NRG") do not constitute a valid contractual undertaking, or any other kind of obligation, by GP to pay glendonTodd. By drafting the consent as a resolution of NRG, even though they could easily have prepared a proper resolution of GP, and then failing to produce the GP membership agreement at the substantial contribution hearing, glendonTodd and Furniss mislead the Court and parties in interest into believing the consents were a valid undertaking of GP.
>
> 2.     Todd Furniss testified falsely at a September 22, 2016 hearing that "glendonTodd did not get any of [money due to be distributed to GP]," and did so intentionally, knowing that his testimony was false.
>
> 3.     glendonTodd and Todd Furniss, acting in concert, knowingly violated the Interim Distribution Order and the Plan and the Order confirming the plan by distributing money to glendonTodd that should instead have been distributed to GP.

4.      Todd Furniss, acting as a fiduciary to either the Debtor or the Reorganized Debtor, took steps to actively conceal the payments to glendonTodd by drafting the consent as one of NRG and not GP, by not recording the initial payment when it was made, by transferring the subsequent payments directly from the Debtor to glendonTodd (so they never appeared in GP's bank account), and by failing to maintain accounting records of the subsequent payments.

(*Id.*).

The Court directed Respondents to appear before the Court and show cause why (i) they should not be held in contempt, (ii) they should not be required to pay Movant's attorneys' fees, and (iii) a report and recommendation should not issue to the United States District Court "to the effect that they should be sanctioned punitive damages of $125,000." (Second Show Cause Order at 3). Significantly, the Court did *not* find that Movant had established any of the foregoing matters by clear and convincing evidence, nor did it set forth the basis for issuance of the Second Show Cause Order.[2]  The Court merely granted the Second Motion to Show Cause and directed that the Respondents prove that the Movant failed to establish, by clear and convincing evidence, that a show cause order should issue.  The Second Show Cause Order contained no findings of fact or conclusions of law with respect to the Motion to Show Cause. *See* Fed. R. Bankr. P. 9020, 9014. A hearing on the Court's show cause directive was set for December 20, 2018.

14.      On November 26, 2018, Respondents filed their *Motion to Reconsider Order Granting Motion for Order to Show Cause* (D.E. #379) (the "**Motion to Reconsider**").

---

[2] Indeed, Movant did not seek monetary sanctions.  The Court directed that Respondents "file a brief regarding the above sanctions of no more than 10 pages by December 3, 2018" (Second Order to Show Cause at 3).  Prior to the issuance of the Second Show Cause Order, there was no indication that any specific sanctions would be awarded, let alone that the amount of sanctions would be determined by the Court in advance of hearing argument on the Motion to Show Cause or evidence at an actual show cause hearing.  There is no rational basis for discerning how the Court arrived at this number.

**MOTION TO RECONSIDER ORDER RULING AND ABATING IN PART SHOW CAUSE PROCEEDING – Page 5**

15.     A hearing on the Motion to Reconsider was set for December 20, 2018 (D.E. #382). On December 15, 2018, the Court, *sua sponte*, converted the hearing to a status conference (D.E. #392).

16.     During such status conference on December 20, 2018, the Court discussed issues of receipt of adequate notice and due process with the parties and offered to re-open the evidence (which had never previously been closed) and permit another evidentiary hearing in connection with the Second Show Cause Order. The Court also further requested briefing on the issue of civil versus criminal contempt (*see* Tr. Status Conference, Dec. 20, 2018 at 21-23 (D.E. #399)). The parties subsequently briefed this issue (*see* D.E. ##401, 402, 403).

17.     Subsequently, on May 7, 2019, the Honorable Martin Hoffman, 68th Judicial District Court, Dallas County, Texas (the "**State Court**"), in the action styled *West Summit Investments, LP, et al. v. Neal Richards Group, LLC, et al.* and referenced as Cause No. DC-17-12500 (the "**State Court Action**"), issued his (a) *Amended Final Judgment* (the "**State Court Judgment**", a true and correct copy of which is attached hereto as **Exhibit "1"** and incorporated herein by reference as if fully set forth herein) and (b) *Amended Findings of Fact And Conclusions of Law* (the "**FOF/COL**", a true and correct copy of which is attached hereto as **Exhibit "2"** and incorporated herein by reference as if fully set forth herein). The State Court Judgment has been timely appealed by all parties.

18.     On May 21, 2019, the Court announced that it would issue an "oral ruling" regarding the Motion to Show Cause on May 30, 2019.

19.     On May 30, 2019, the Court issued its *Order Ruling And Abating in Part Show Cause Proceeding* (the "**Third Show Cause Order**"), a true and correct copy of which is attached

hereto as **Exhibit "3"** and incorporated herein by reference as if fully set forth, in which it holds

and orders, in part, that:

      a.    "Mr. Furniss should not be sanctioned or held in contempt for his testimony at the September 22, 2016 hearing, or for any other statements, proffers or declarations complained of by the [Movant];"

      b.    the portion of the Show Cause Order which "contemplate[ed] the imposition of a penalty is VACATED;"

      c.    "the ruling on the transfers totaling $2,785,000 will be ABATED until a determination on the issue has been made by a final state court order;"

      d.    "GTC and Mr. Furniss will pay the Receiver $115,000 on or before September 21, 2019, unless the awards made by the state court, $1,150,000 and attorneys' fees, are paid before that date;"

      e.    "the award will increase by $115,000 every four months until the state court awards are paid;" and

      f.    "the Receiver should be awarded attorney fees and costs in accordance with the Court's oral ruling."[3]

20.    Respondents hereby seek reconsideration of the Third Show Cause Order

with respect to the sanctions levied and the attorneys' fees awarded.

## Legal Standard

21.    This motion is filed pursuant to Rules 59 and 60 of the Federal Rules of Civil

Procedure, as adopted for application to this contested matter pursuant to Bankruptcy Rules 9023

and 9024.  Fed. R. Civ. P. 59, 60; Fed. R. Bankr. P. 9023, 9024.  "Rule 59 permits . . . a court to

reconsider and amend a previous order . . .."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.

2003) (*quoting* 12 *Moore's Federal Practice* ¶ 59.30[4] (3d ed. 2000).  A motion for

reconsideration may be granted pursuant to Rule 59 if a court has committed clear error.  *Id.*  Rule

---

[3] A true and correct copy of the transcript of the May 30, 2019, oral ruling is attached hereto as **Exhibit "4"** and incorporated herein by reference as if fully set forth herein.

**MOTION TO RECONSIDER ORDER RULING AND ABATING IN PART SHOW CAUSE PROCEEDING – Page 7**

60, in turn, provides that a court may reconsider a final judgment, order or proceeding if, among other reasons, the judgment is void or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (6).

<u>**Discussion/Request for Relief**</u>

22.     Here, the Third Show Cause Order should be reconsidered and vacated by the Court because:

a.  The Third Show Cause Order violates the Respondents' due process protection provided by the Fifth Amendment to the United States Constitution and therefore is void.

b.  The State Court Judgment is a final order and the Third Show Cause Order both duplicates the State Court Judgment and is premised on incorrect facts regarding the State Court Judgment.

c.  The Third Show Cause Order ignores state law issues in contravention of *Stern v. Marshall*.[4]

d.  The record does not support a finding of bad faith.

A.     <u>**The Third Show Cause Order is Void Because it Violates Due Process**</u>

23.     The fundamental tenets of due process require that a party be given notice of – and the right to object to – relief sought against them.  *See* U.S. Const. amend. v; *see also, e.g., Jobin v. Otis (In re M & L Bus. Mach. Co.)*, 190 B.R. 111, 115 (D. Colo. 1995) ("An essential requirement of due process is 'notice reasonably calculated, under all of the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objections.'").  Under Fifth Circuit law, orders entered in violation of a party's due process rights

---

[4] 564 U.S. 462 (2011).

**MOTION TO RECONSIDER ORDER RULING AND ABATING IN PART SHOW CAUSE PROCEEDING – Page 8**

are void and must be set aside. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003).

24.     Here, the Third Show Cause Order is not supported by the record and the Respondents were not provided ample notice of or opportunity to object to the award of sanctions. In the Third Show Cause Order, the Court directs that "Mr. Furniss will pay the Receiver $115,000 on or before September 21, 2019, unless the awards made by the state court, $1,150,000 and attorneys' fees, are paid before that date" and that "the award will increase by $115,000 every four months until the state court awards are paid." (Third Show Cause Order at 2). The Court has essentially sanctioned the Respondents for the full amount awarded by the State Court in the State Court Judgment as an award in the Third Show Cause Order. The State Court Judgment has the effect of collection behind it; the Third Show Cause Order has the punitive effect of contempt behind it. There is no support in the record for the Court's self-imposed sanction against Mr. Furniss for a bad faith violation of the Confirmation Order. As the record shows, Mr. Furniss testified that he was, at all times relevant, operating within the authority he believed was given to him under the Consents.

25.     Even if the relief awarded by the Court could be supported by section 105(a) of the Bankruptcy Code and/or other authority cited by the Court in its ruling, which it cannot, there is absolutely no support in the pleadings or on the record for the determination that the Respondents should pay $115,000 by September 15, 2019, and then, if the award in the State Court Judgment is not paid, additional $115,000 amounts every four months until such award is paid, nor was there ever any opportunity for Respondents to object or otherwise respond to this in the pleadings or on the record.

26. Further, the award of punitive sanctions is tantamount to criminal contempt. *See In re Wiley*, 315 B.R. 682, 688 (Bankr. E.D. La. 2004) ("Where the order's purpose is to punish a party or vindicate the authority of the court, it is viewed as criminal contempt."). Perhaps not surprisingly, criminal contempt proceedings invoke heightened protections regarding due process.

27. When proceedings involve criminal contempt, Rule 42 of the Federal Rules of Criminal Procedure is implicated. Rule 42 provides that "[a] person who commits criminal contempt may be punished for that contempt after prosecution on notice. Fed. R. Crim. P. 42(a). Such notice must, among other things, "state the essential facts constituting the criminal contempt charged and <u>describe it as such</u>." Fed. R. Crim. P. 42(a)(1)(C) (emphasis added). This was not done, and the award of sanctions in the Third Show Cause Order violates the Respondents' due process rights.

28. Instead, the Court incorrectly characterizes its contempt ruling as not intended to "punish." (Tr. May 30, 2019 hearing at 7, ll. 15-16). Even if correct (which it is not), due process issues arise with respect to civil contempt as well. In a civil contempt proceeding, the movant bears the burden of establishing by clear and convincing evidence (i) that a court order was in effect, (ii) that the order required certain conduct, and (iii) that the respondent failed to comply with the court's order. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 581-82 (Fed. Cir. 2005). Evidence is "clear and convincing" only if it "produces in the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Hornbeck v. Offshore Servs., LLC v. Salazar*, 713 F.3d 787-792 (5th Cir. 2013). This is a burden the Movant here did not meet and the record does not support.

29.     Finally, the mechanics of Third Show Cause Order are unrealistic.  For example, it provides no consideration of an appeal by the Respondents.  If, by way of example, such an appeal were to take two years and the Respondents were to prevail, approximately $805,000 in damages would have been paid by the Respondents pursuant to the Third Show Cause Order with no mechanism for the return to Respondents for such monies.  Similarly, it does not contemplate a partial payment of the $1,150,000 or a settlement between the parties.

30.     For all of these reasons, the Third Show Cause Order violates the Respondents' right to due process and therefore is void as a matter of law.

**B.     The State Court Judgment is a Final Order**

31.     In its oral ruling issued regarding the Third Show Cause Order, the Court incorrectly stated that "[t]here is no State Court final order on the two payments totaling the amount of the substantial contribution request for $2.875 million, and so I abate as to those transfers." (Tr. May 30, 2019 hearing at 4, ll. 11-14).

32.     However, in its FOF/COL, the State Court found, *inter alia*:

> Mr. Furniss did not breach his fiduciary duty to NRG Austin "when he caused the September 12, 2016 and the February 27, 2017 transfers (totaling $2,875,000.21) because the Court has found the June 2016 Consents, NRGA Ex. 1 and NRGA Ex. 2 (the "Consents") are contractual obligations of NRG Austin and that NRG Austin was legally obligated to pay $2,875,000 to glendonTodd pursuant to the Consents.

(FOF/COL at 2-3, ¶7).

33.     In its Judgment, the State Court states that "[a]ll relief requested in this case and not expressly granted is denied: and that the Judgment "finally disposes of all parties and claims and is appealable."  Accordingly, all issues relating to the transfer of $2,875,000 to Respondent GTC *were* finally resolved in favor of GTC and Mr. Furniss by the State Court in and through its FOF/COL and Judgment, and there is no reason for abating the proceeding on the Motion to Show

Cause because there is no "determination on the issue" pending before the State Court. All issues before the State Court have been concluded. For this reason, the Third Show Cause Order is premised on incorrect facts and must be vacated as set forth herein.

## C.     The Third Show Cause Order Ignores State Law Issues

34.     In the seminal Supreme Court case *Stern V. Marshall*[5] and its progeny, the Supreme Court has held that a bankruptcy court does not have constitutional authority to enter final judgments on certain state law claims. This is undoubtedly true with respect to such state law claims where, as is the case here, the underlying bankruptcy case and the administration of the bankruptcy estate were otherwise dismissed. *See In re Mis Tres Props., LLC*, 2016 WL 11585917 (Bankr. W.D. Tex. June 6, 2016).

35.     In the State Court Action, Movant and Respondent GTC entered into the Settlement Agreement pursuant to which the issues raised in this case with respect to payments directed by the Debtor to GTC were to be determined in the State Court Action (*see* Resp. Ex. 1). Section 9(a) of the Settlement Agreement provides:

> The GTC-GP Claims and all causes of action against any or more of the GTC Group (or their transferees), regardless of how such claims are styled, whether owned by Neal Richards Group Austin Development, LLC or some other party, to recover the Distributed Funds or damages related to the Distributed Funds (the "Carve-Out Claims") shall be tried in the Receivership Court during a one day trial (6 hours total, with 3 hours per side) to the bench.

The term "Distributed Funds" is defined in the Settlement Agreement under Recitals:

> The GTC Parties represent and warrant to the Receiver that one or more of the GTC Parties have previously received only $4,025,000.21 (collectively, the "Distributed Funds") pursuant to the alleged authority which the GTC Parties contend was provided under the Consents.

---

[5] 564 U.S. 462 (2011).

**MOTION TO RECONSIDER ORDER RULING AND ABATING IN PART SHOW CAUSE PROCEEDING – Page 12**

(Settlement Agreement at 1). These are the funds at issue before this Court. The issue of validity of the Consents was before the State Court, where they were found to be valid and enforceable under applicable state law. The Third Show Cause Order effectively negates the Settlement Agreement and circumvents matters on file for determination in the State Court Action, which were on file and known by the Movant long before the Motion to Show Cause was filed.

36.     The parties specifically agreed in the Settlement Agreement that they would look to the State Court Action to determine the very issues raised in the Motion to Show Cause. Ruling on the Motion to Show Cause requires this Court to determine and enforce rights of the parties to the Settlement Agreement. This violates the dictates of the Supreme Court's decision in *Stern*. Not allowing compliance with the Settlement Agreement in this context will thwart the benefit of the bargain struck by the parties, including the Respondents, and lead to a potential negative impact in an incorrect forum where this Court does not have constitutional authority to enter a final judgment in any event. Further, the Movant fails to demonstrate that the State Court is any less competent or qualified to determine the non-contempt issues raised in the Motion to Show Cause. Finally, merely by filing the Motion to Show Cause, the Movant violated the Settlement Agreement under applicable state law. For these reasons, the Third Show Cause Order must be vacated as set forth herein.

**D.    <u>The Record Does Not Support A Finding Of Bad Faith</u>**

37.     No underlying facts to support the conclusory award of sanctions and attorneys' fees are provided by the Court in the Third Show Cause Order. The ruling is built on facts and evidence submitted in the State Court Action, which have nothing to do with compliance issues involving the Plan or Confirmation Order in this case. In fact, the bankruptcy of Debtor, the Plan and the Confirmation order are not even mentioned in the FOF/COL.

38. This Court's issuance of a bad faith ruling related to the Plan and Confirmation Order, without taking specific evidence on that specific issue, is improper. The ruling of the State Court involved whether or to what extent GTG and/or Mr. Furniss breached a duty owing to the general partner NRG Austin, not whether the provisions of the Plan were complied with by GTC. Bad faith with respect to compliance with a federal Court order (which requires an element of scienter) is far different than whether a fiduciary duty was breached under state corporate law (which is more akin to the tort "strict liability" standard).

39. The record before this Court, similarly, does not support a finding of bad faith, and the Movant has not met its burden with respect thereto. Mr. Furniss simultaneously was the CEO and manager of the general partner of the Debtor, NRG Austin and GTC at the request of the same managers who signed the Consents. He testified that he acted in good faith and at all times in a manner he believed to be consistent with the Consents upon the advice of three separate counsel. GTC was the recipient of the funds as designated by the CEO of the GP of NRG Austin, the beneficiary under the Plan. That is what the testimony before this Court established. No testimony was presented to this Court to the contrary. Indeed, as the Court noted on the record, Mr. Furniss' testimony was "*completely consistent with his view* that the consents were a valid avenue payment." (Tr. May 30, 2019 Hr. 4, ll. 4-5) (emphasis added). This statement simply does not square with the Court's view that "Mr. Furniss and GTC knew these actions violated the plan and the confirmation order" (*Id.* 5, ll.13-14) and its conclusion that Mr. Furniss acted in bad faith. That connection simply cannot be drawn from the record.

40. Further, drawing such a conclusion (that making the distributions was tantamount to a breach of fiduciary duty and bad faith) ignores a very important fact – that Mr. Furniss was also the CEO of GTC. Had such distributions not been made, using the logic of the Court, Mr.

Furniss would have breached his fiduciary duty to GTC. It defies logic that the Consents were drafted in such a way that Mr. Furniss could not act without breaching a duty to someone. A much more realistic and logical explanation is that Mr. Furniss' actions were consistent with the spirit of the Consents and no duty was breached at all.

41.     Finally, the Third Show Cause Order – premised ostensibly on the "breach" of the Confirmation Order by Mr. Furniss – rewards the Movant, who himself breached the Settlement Agreement merely by filing the Motion to Show Cause in the first place. The "breach" of the Confirmation Order (previously described by this Court as a "foot fault") harmed no one. But the breach of the Settlement Agreement, particularly when combined with the relief granted in the Third Show Cause Order, has a very real negative pecuniary effect on the Respondents, *and benefits the Receiver, not the estate*. This result is an affront to justice and fairness and should not be allowed to stand.

42.     By adopting the FOF/COL, this Court has effectively crafted a remedy without support in its record, one which duplicates the award already issued in the State Court Judgment. The State Court Judgment provides the one and only remedy to NRG Austin and by adding to it this Court is essentially awarding more damages in the State Court Action, a clear violation of *Stern*. For these reasons, the Third Show Cause Order should be vacated as set forth herein.

## Conclusion

43.     Based on the foregoing, the Second Show Cause Order should be reconsidered and vacated with respect to the sanctions levied and attorneys' fees awarded. The Respondents request an opportunity to be heard on this motion. The Respondents further request such other and further relief to which it may be entitled under the circumstances.

Dated: June 13, 2019.      Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

/s/ Charles R. Gibbs
Charles R. Gibbs
(Texas State Nar No. 07846300)
Eric C. Seitz
(Texas State Bar No. 24067863
1717 Main Street
Suite 3750
Dallas, TX 75201
214.765.3600
214-765-3602
charles.gibbs@kattenlaw.com
eric.seitz@kattenlaw.com

AND

AKERLY LAW PLLC

Bruce W. Akerly
State Bar No. 00953200
878 S. Denton Tap Road, Suite 100
Coppell, Texas  75019
Telephone:  469-444-1878
Fax:  469-444-1801
bakerly@akerlylaw.com


COUNSEL FOR RESPONDENTS
gLENDONTODD CAPITAL LLC AND TODD
FURNISSS

## <u>CERTIFICATE OF CONFERENCE</u>

   The undersigned certifies that he conferred or attempted to confer with counsel for Movant with respect to the relief requested herein and Movant refused to agree to the relief requested. Accordingly, the matter is submitted to the Court for determination.


          /s/ Eric C. Seitz _____
          Eric C. Seitz

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that a true and correct copy of the foregoing pleading was forwarded by electronic transmission and/or first-class mail, postage prepaid, to the following person on June 13, 2019:

> Stephen W. Lemmon
> Rhonda B. Mates
> Streusand Landon Ozburn & Lemmon LLP
> 811 Barton Springs Road, Suite 811
> Austin, Texas 78704
>
> Joel W. Reese
> Tyler J. Bexley
> Reese Marketos LLP
> 750 N. St. Paul St., Ste. 600
> Dallas, Texas 75201-3201

/s/ Eric C. Seitz_____
Eric C. Seitz

**Exhibit "1"**

**State Court Judgment**

US_139794298v5_392771-00001 6/13/2019 4:52 PM

**Exhibit "2"**

**FOF/COL**

**Exhibit "3"**

**Third Show Cause Order**

**Exhibit "4"**

**May 30, 20129 Transcript**