# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO:  16-10020-TMD |
| | ) | CHAPTER 11 |
| | ) | |
| FPMC AUSTIN REALTY PARTNERS, LP, | ) | Austin, Texas |
| | ) | |
| | ) | Thursday, May 30, 2019 |
| Debtor. | ) | 11:00 a.m. |


ORAL RULING (HELD TELEPHONICALLY)

RE:  311 MOTION FOR ORDER TO SHOW CAUSE
FOR INTERESTED PARTY HOWARD MARC SPECTOR


BEFORE THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE



**APPEARANCES:**              NONE MADE


Court Reporter:              Recorded; Digital

Transcribed by:              Exceptional Reporting Services, Inc.
                             P.O. Box 18668
                             Corpus Christi, TX 78480-8668
                             361 949-2988






Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>SCHEDULED TELEPHONIC APPEARANCES FOR</u>:


Wade Barker:                    EDWIN P. KEIFFER, ESQ.
                                Rochelle McCullough, LLP
                                325 N. Saint Paul St., Suite 4500
                                Dallas, TX 75201


K&L Gates:                      DAVID WEITMAN, ESQ.
                                K&L Gates LLP
                                1717 Main St., Suite 2800
                                Dallas, TX 75201


gLendontodd Capital:            BRUCE W. AKERLY, ESQ.
                                Akerly Law, PLLC
                                878 S. Denton Tap Road, Suite 100
                                Coppell, TX 75019


Jeffrey H. Mims:                STEVEN T. HOLMES, ESQ.
                                Cavazos Hendricks Poiro, P.C.
                                900 Jackson St., Suite 570
                                Founders Square
                                Dallas, TX 75202


Howard Marc Spector:            HOWARD M. SPECTOR, PRO SE
                                12770 Coit Rd., Suite 1100
                                Dallas, TX 75251

1        **Austin, Texas; Thursday, May 30, 2019; 11:00 a.m.**

2                        **(Call to Order)**

3        **THE COURT**:  Please be seated.  *FPMC Austin Realty*

4  *Partners, LP*, 16-10020.  This is my oral ruling.

5        I've reviewed my prior ruling on the substantial

6  contribution claim, took judicial notice of the plan and

7  confirmation order.  I have considered the testimony and

8  exhibits at the evidentiary hearing held on October 3rd, 2018.

9  I have read and reread that transcript many times as well as

10  the transcript from the substantial contribution hearing.  I've

11  also read the briefs filed by the parties except that I have

12  not considered the additional evidence the receiver asked me to

13  reopen the record to consider for reasons previously discussed.

14        This ruling comes in three parts.

15        Part 1.  As I have said, I have gone back and forth

16  on the alleged misrepresentation.  The consents were not hidden

17  at the substantial contribution hearing but were very much a

18  part of it.  They were in the record.  So, when Mr. Furniss

19  testified, it was in the context with the consents which we all

20  assumed would allow GTC to collect money if the substantial

21  contribution claims were not allowed.  The infirmities with the

22  consents as alleged by the receiver were not at issue at the

23  time.

24        Therefore, I believe and find that when Mr. Furniss

25  said, "And glendonTodd didn't get any of that", he meant under

1    the waterfall established by the partnership agreement and no

2    more.  He was trying to make clear that GTC did not hold any

3    equity and therefore did not get anything as an equity holder;

4    and he could say that much completely consistent with his view

5    that the consents were a valid avenue payment.

6         That's what I heard and that's what I took him to

7    mean as I looked back at the transcript and the context around

8    that statement.  So there was no misrepresentation nor do I

9    find that there is sufficient evidence that the other

10   statements by the receiver were misrepresentations.

11        Part 2.  There is no State Court final order on the

12   two payments totaling the amount of the substantial

13   contribution request for $2.875 million, and so I abate as to

14   those transfers.  I'm not ruling one way or the other for the

15   reasons stated a few weeks ago.  And if there is a final order

16   from the State Court and either side sees the need to reopen,

17   I'll do so.

18        There is a final order on the payment of $1.150

19   million.  The State Court ruled that Mr. Furniss breached his

20   fiduciary duty to NRG Austin, the GP, by making this transfer

21   and that Mr. Furniss "had no legal right" to make this

22   transfer.

23        Mr. Furniss and GTC also breached the fiduciary duty

24   they owed to the GP under bankruptcy law and violated the

25   confirmation order at Section 3(b) ordering clause, Page 11,

1    which requires agents and representatives of the Debtor and the

2    Reorganized Debtor to "Carry out all provisions of the plan".

3            On Page 11 of the plan, the plan states that "The

4    Class 5 allowed interest of the FPMC equity holders shall

5    retain the respective allowed interest in the Reorganized

6    Debtor and shall receive distributions in accordance with the

7    partnership agreement after the payment of all other allowed

8    claims".

9            I find that those respective allowed interests, and

10   in particular the GP, did not receive distributions in

11   accordance with the partnership agreement because of the $1.15

12   million transfer to GTC, and so the plan and confirmation order

13   were both violated, and Mr. Furniss and GTC knew these actions

14   violated the plan and the confirmation order.

15           As to the why, one need look no further than the

16   letter drafted and signed by Mr. Furniss, GTC Exhibit 5, which

17   shows why people were anxious to get this money to GTC.

18   Significantly, the letter discloses that GTC was in debt to

19   Jefe Plover (phonetic), Dr. Barker's entity, in the amount of

20   $1.6 million lending some urgency to GTC's need to get its

21   hands on some money.

22           Actually, many nests were feathered in this

23   arrangement.  The letter makes reference to "A number of

24   obligations each of us has"; the big one is Jefe Plover owned

25   by Dr. Barker, and GTC gets the benefit of that loan being

1    repaid which in turn benefits Mr. Furniss, Ms. Hatcher

2    (phonetic), and Dr. Barker.  Mr. Furniss's wife gets repaid and

3    GTC also would benefit from a proposed $25,000 a month payment.

4         I have heard many times from Mr. Furniss and from his

5    lawyers statements to the effect that certain members of the GP

6    were either in jail or under indictment, or that allowing them

7    to collect the money owed and "promote" would violate federal

8    law.  I have seen no motions or briefing on this point nor did

9    anyone object to their interest in the bankruptcy case or

10   object to getting the distributions that they were entitled to

11   under the plan.

12        This breach of fiduciary duty by Mr. Furniss and GTC

13   is bad faith conduct.  Clearly, a Bankruptcy Court when given

14   evidence that fiduciaries under a plan of reorganization have

15   violated their duties to case constituents by misappropriating

16   the money to be distributed under a plan, the Bankruptcy Court

17   must take action and impose appropriate sanctions.

18        I have been given that evidence and it is clear and

19   convincing.  Under Section 105, "The Court may issue any order

20   of process or judgment that is necessary or appropriate to

21   carry out the provisions of this title".  It further states

22   that the Court may take "Any action or make any determination

23   necessary or appropriate to enforce or implement Court orders

24   or rules or to prevent an abuse of process".

25        I don't think there can be any doubt that knowingly

7

1    violating a plan for personal benefit is an abuse of process or

2    that Section 105 extends to plan violations and violations of a

3    confirmation order.

4            And I would cite *Terrebonne Fuel and Lube*, 108 F.3d

5    609, from the Fifth Circuit, two bankruptcy opinions from the

6    Southern District of Texas, *In Re Rodriguez*, 396 B.R. 436 and

7    *In Re Sanchez*, 372 B.R. 289, and finally, a case from the

8    Bankruptcy Court for the Western District of North Carolina,

9    *Tate*, 253 B.R. 653.

10           GTC has made the superficially logical argument that

11   this is a matter between the GP of the Debtor and members of

12   the GP, but the fact remains that not even the GP received the

13   money, and the plan and confirmation were a call for GP to

14   receive that distribution.

15           As noted previously, I have the power to compensate

16   and coerce, but not punish.  As a coercive sanction, I order

17   GTC and Mr. Furniss to pay the receiver $115,000 unless the

18   awards made by the State Court of $1.150 million and attorneys'

19   fees are paid by September 21, 2019.  The award will increase

20   by $115,000 every four months thereafter that the State Court

21   awards are not paid.  The sanction again will not be imposed

22   if the State Court awards are paid in full before September 21,

23   '19.

24           I will also, as a compensating sanction, award the

25   receiver attorneys' fees and costs, but with caveats.  First, I

1  will not allow duplicate fees, meaning I will not award fees

2  already awarded by the State Court.  In other words, I will

3  only award those fees incurred in handling this matter here in

4  Bankruptcy Court and the Federal District Court appeal, and

5  only if they are not already covered by the State Court

6  judgment.

7        Second, I will award only that portion of fees that

8  corresponds to the ratio of $1.150 million to $4.25 million.

9  Whether an additional award is appropriate based on the

10 ultimate State Court disposition awaits that disposition.

11       If the receiver intends to seek fees and costs as

12 just outlined, the receiver must do so by June 14.  Any

13 objection to those fees must be filed by June 28.

14       All of this will be incorporated in a separate order

15 that will follow.

16       We are adjourned.

17   **(This proceeding was adjourned at 11:08 a.m.)**

18

19

20

21

22

23

24

25

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          June 7, 2019_

TONI HUDSON, TRANSCRIBER